## Case No. 2,950.

### COFFIN v. OGDEN et al.

[7 Blatchf. 61;[1] 3 Fish. Pat. Cas. 640; Merw. Pat. Inv. 669.]

Circuit Court, S. D. New York. Nov. 29, 1869.[2]

PATENTS—"LOCKS"—CONSTRUCTION — COMPLETED INVENTION—DEDICATION.

1. Where, in a suit for the infringement of a patent for an improvement in a lock, the defendant's lock contained the entire mechanical arrangement, in substance, which was found in the description of the plaintiff's patent, so far as the invention of the patentee was concerned, with only such variations as the skill of a mechanic would suggest: Held, that the plaintiff's patent ought, if possible, to be so construed as to make it valid with reference to the defendant's lock.

2. The claims of the reissued patent granted to Charles A. Miller, assignee of William S. Kirkham, the inventor, January 27th, 1863, for an improvement in locks and latches, on the surrender of the original patent granted to Kirkham, June 11th, 1861, namely: 1. So dividing the hub or follower, and so combining the same with a reversible latch, that the arms,

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirmed in Coffin v. Ogden, 18 Wall. (85 U. S.) 120.]

or their equivalents, of the divided hub or follower, may be released, for the purpose of allowing the latch to be reversed or turned; 2. So constructing and arranging the individual parts of a divided hub or follower, that the reversal or turning of the latch is prevented only by the presence of the spindle within the lock—so construed as to relieve them from the objection that they claim results or effects or functions.

3. The first claim is a claim to dividing the hub or follower in substantially the manner described by the patentee, and to combining the hub, so divided, with a reversible latch, in substantially the manner described by the patentee, the arms of the hub being released in substantially the manner described by the patentee, for the purpose of allowing the latch to be reversed.

4. The second claim is a claim to constructing and arranging the individual parts of the divided hub in substantially the manner described by the patentee, the reversal of the latch being prevented only by the presence of the spindle in the lock in substantially the manner described by the patentee.

5. The proper rule is to construe the claims in connection with the descriptive parts of the specification, and with reference to what is seen to be the real invention.

6. Where a lock containing a reversible latch, embodying the inventions covered by such claims, was, prior to the making of the invention by the patentee, made by E., and shown to three lock-makers, who examined it and understood its construction, and it was not put upon a door or put into use, or tested otherwise than by the exhibition of it and its working to the three lock-makers, but was a complete working reversible latch: *Held*, that it was a complete and perfected invention, and that such a knowledge of it, as a completed invention, was given to the public, before the patentee made his invention of the same thing, as to deprive the patentee of his right as first inventor.

7. The reversible latch of E. was a completed invention, although the lock containing in it was not actually put into use on a door.

[See note at end of case.]

In equity. This was a final hearing, on pleadings and proofs, of a suit [against James B. Ogden and Lucius Woodruff] founded on reissued letters patent of the United States [No. 1,390] granted to Charles A. Miller, assignee of William S. Kirkham, the inventor, January 27th, 1863, for an improvement in locks and latches, and assigned to the plaintiff [Paul C. Coffin]. The original letters patent [No. 32,521] were granted to Kirkham, June 11th, 1861.

George Gifford, for plaintiff.
Benjamin F. Thurston and · Stephen D. Law, for defendants.

BLATCHFORD, District Judge. The defences set up in the answer, that are relied on, are: 1. That the invention in question was previously made by one Barthol Erbe, at Birmingham, near Pittsburg, Pennsylvania; 2. That the claims of the reissued patent are not for any patentable invention, or for any device or mechanism arranged and operating for a particular purpose or to produce a particular effect, but are for an effect or function, irrespective of any particular mechanism, and that such patent is,

therefore, void; 3. That, if the patent is valid, the defendants have not infringed it.

The object of the invention is stated, in the specification, to be, to render a door latch "readily applicable to either right or left hand doors." The drawings annexed to the patent represent a structure, the whole of which is called, in the specification, a doorlock, containing as well a bolt to be operated by a key, as a latch to be operated by a spindle attached to a knob or handle. The invention relates only to those parts of the structure which are connected with the operation of the latch. The specification states, that the invention is applicable to door-locks generally—as well to a lock let into the edge of a door, and consequently concealed from view, as to a lock secured to the outer surface of a door. The latch, which is operated by the turning of the spindle, has its head, that is, the portion which projects beyond the face plate of the lock, made square, and bevelled or rounded off at one end. The stem of the latch and the portion adjacent to the head are cylindrical. While the lock is in working order, the square portion of the latch fits snugly in a square opening in the face plate, but such portion is arranged to slide freely in such opening, and, when such portion is pulled so far forward that the cylindrical portion takes its place in such opening, the latch can be readily turned and its bevelled edge be reversed. The arrangement to allow of such reversal is as follows: At or near the centre of the cylindrical portion of the latch is a recess therein, in which fits the lower end of a lever, which has its fulcrum on a lug projecting from the inside of the upper edge of the case, a spring bearing against the short arm of the lever. A slide is connected by a pin to such lever, and on such slide are two projections or lugs, against which the arms of the hub or follower bear. This hub or follower consists of two parts. One of them is arranged to turn in both faces of the lock, and has a square opening for the reception of the spindle, and is partly cut away for the reception of the other part, a portion of which is also adapted to the spindle. It is this latter part of the hub that acts on the projections on the slide before mentioned, the points which bear against such projections being termed arms. When the spindle is out of the hub, this latter part of the hub can be slid in a direction away from the face plate, independently of the other portion of the hub, which remains stationary, as it is confined to the front and rear plates of the lock case. When the spindle is in the hub, the two portions of the hub become as one portion, and perform the functions of an ordinary hub, that is, on turning the spindle, one or the other of the arms acts on one of the projections on the slide before mentioned, and causes the slide to operate the latch. When the spindle is withdrawn, the two portions of the hub are released, from each other, and the arms are

released so far as their action on such projections is concerned. When it is desirable to reverse the latch, the first thing to be done is, to withdraw the spindle, after which the latch can be pulled out from the face plate to a certain distance, which the presence of the spindle in the hub has hitherto prevented. On thus pulling the latch out, the lever and the slide move in the same direction, such movement being permitted by the yielding of the arms, which have been released on the withdrawing of the spindle. After the latch has been drawn out so far that its cylindrical portion takes the place before occupied by its head in the square opening in the face plate, the latch can be readily turned and reversed, and then be pushed back to its proper position, and the spindle can then be reinserted. A spring is arranged to restore to its proper position the movable portion of the hub. By this construction of the hub, its arms can be released, and the reversal of the latch be promptly accomplished, while such reversal is effectually prevented by the presence of the spindle in the hub. In this way, the lock is capable of being applied to either a right hand or a left hand door.

The claims of the patent are two in number: 1. So dividing the hub or follower, and so combining the same with a reversible latch, that the arms, or their equivalents, of the divided hub or follower may be released, for the purpose of allowing the latch to be reversed or turned; 2. So constructing and arranging the individual parts of a divided hub or follower, that the reversal or turning of the latch is prevented only by the presence of the spindle within the lock.

The lock made and sold by the defendants is, in its mechanical construction, substantially the same as the lock described in the plaintiff's patent, so far as the arrangement of the parts of its divided hub and their combination with a reversible latch are concerned. The defendants' hub is divided into three parts, one of which is movable relatively to the other two. The movable part carries the arms for operating the latch. When such movable part is released from the other parts, the latch can be moved the necessary distance to allow its bevelled head to be turned or reversed. The parts of the divided hub, thus arranged, are combined with the reversible latch. The presence of the spindle in the hub prevents the action of the movable part of the hub, while the withdrawing of such spindle releases such movable part of the hub, so as to allow of the reversal of the latch. There is no lever connecting the slide with the shank of the latch, but the slide is connected directly with such shank—a variation which is merely formal and does not concern the invention. So, also, the variation, by dividing the stationary part of the hub into two parts, is merely formal. The defendants' lock contains the entire mechanical arrangement, in substance, which is found in the description of the plaintiff's patent, so far as the invention of Kirkham is concerned, with only such variations as the skill of a mechanic would suggest. The invention of Kirkham is taken, in its mechanical construction and arrangement. This being so, and the invention of Kirkham, as described, being infringed, the rules of law require that the plaintiff's patent shall, if possible, be so construed, as to make it valid with reference to the defendants' lock—ut magis valeat quam pereat. Upon this principle, there is no difficulty in so construing the claims of the patent as to relieve them from the objection made, that they claim results or effects or functions. The first claim must be held to be a claim to dividing the hub or follower in substantially the manner described by the patentee, and to combining the hub, so divided, with a reversible latch, in substantially the manner described by the patentee, the arms of the hub being released in substantially the manner described by the patentee, for the purpose of allowing the latch to be reversed. The second claim must be held to be a claim to constructing and arranging the individual parts of the divided hub in substantially the manner described by the patentee, the reversal of the latch being prevented only by the presence of the spindle in the lock, in substantially the manner described by the patentee. The claims must be construed in connection with the descriptive parts of the specification, and with reference to what is seen to be the real invention. Case v. Brown, 2 Wall. [69 U. S.] 320. If the defendants' division of the hub, and their combination of such hub with a reversible latch, and their release of the arms of the hub, and their arrangement of the individual parts of the divided hub, and their prevention, by the presence of the spindle in the lock, of the reversal of the latch, were not all of them effected substantally in the same way, and by the same mechanical constructions, described in the plaintiff's patent, the question whether the claims of such patent could be so construed as to be made to embrace mechanical constructions not substantially described in such patent, for dividing the hub, and combining it with a reversible latch, and releasing the arms of the hub, and arranging the individual parts of the divided hub, and preventing the reversal of the latch by the presence of the spindle, would become an important one. In the present case, such question is unimportant, for, on the construction which the claims must receive, the defendants' lock is clearly an infringement.

The remaining question is that of novelty. The reversible latch claimed to have been invented and made by Erbe, prior to Kirkham's invention, undoubtedly embodied the inventions claimed in the plaintiff's patent, as above construed. The lock of Erbe, containing such latch, had a hub divided into

three parts. The central portion of the hub was no thicker than the space between the walls of the lock-case, while the other two portions were like washers, and of the same thickness as the walls of the lock-case. The central portion was rendered movable by the withdrawal of the spindle, and was so combined with a reversible latch as to permit the movement of such central portion to a sufficient distance to allow of the withdrawal of the latch far enough to allow of its reversal. It possessed all three of the features which go to make up the reversible latch of the plaintiff's patent: 1. A reversible latch-bolt, capable of being reversed when pulled out from the face of the lock-case to a distance greater than the distance to which it is usually shot; 2. A hub so divided that the part carrying the arms can be detached at will from the other parts of the hub, and allowed to slide within the walls of the lock; 3. A spindle capable of being withdrawn from the parts forming the hub. The parts of the hub in the Erbe lock, and their combinations with the latch and the spindle, are, in mechanical construction and arrangement, substantially the same as the corresponding parts described in the plaintiff's patent and found in the defendants' lock. In the feature of having a hub divided into three parts instead of two, that is, one movable part, and two separated stationary parts embracing the movable part, when the latch is set, the Erbe lock is formally more like the defendants' lock than it is like the Kirkham lock. But, as this formal difference does not relieve the defendants' lock from being an infringement, so it does not destroy the identity between the Kirkham lock and the Erbe lock, in the features which characterize the patented invention. The fact that there is a permanent connection, in the Kirkham lock, between the two parts of the hub which enter the walls of the lock, has no relation to any of the arrangements or combinations through which the latch is made reversible.

The question, then, arises, as to whether the Erbe lock antedates, as a completed invention, the Kirkham lock. The weight of the evidence is, that Kirkham did not make his invention at an earlier date than the 1st of March, 1861. The testimony of Miller, as to the exhibition by Kirkham, as early as the 1st of September, 1860, of a drawing of the invention, is not to be relied on, in view of the testimony given by Allport and Hill, in reference to the circumstances attending the construction by Kirkham of the first lock which embodied his invention. Besides, the testimony of Miller as to when the drawing was exhibited is, in itself, vague and inconclusive and is not corroborated by any reliable fact or circumstance in the case.

What, then, is the date of the Erbe invention? Erbe himself testifies, that he first made a lock containing such invention in the latter part of the year 1860. A duplicate or counterpart of the lock so then made is in evidence, and contains the construction and arrangement of mechanism before stated as characterizing the Erbe lock. He made but one of such locks at that time. He was at the time foreman of a lock-making establishment at Birmingham. He exhibited such lock before the 1st of January, 1861, and about Christmas day, in 1860, to Bernhard Brosi, a lock-maker, who then resided at Birmingham, and worked in the same establishment with him. He also exhibited such lock on the 1st day of January, 1861, to Henry Masta, who was at the time a pattern-maker in the same establishment. He also exhibited it in January, 1861, to Andrew Patterson, who was at the time superintendent of the same establishment. Erbe showed Brosi how the lock worked, so as to be used either right or left, and showed him the hub or follower made in two pieces, one of them capable of being taken out when the knob was taken away, and the other part, being the main part of the follower, sliding forward in the case of the lock with the latch, so that the square part of the latch could be reversed. Brosi had, at that time, been a lock-maker for eight years. He examined the lock carefully at the time, and had never seen a reversible latch before. He says, that the lock which Erbe then exhibited to him was the same, in construction, as the duplicate or counterpart before referred to. and was a complete lock, capable of working, although the inside part of the latch was roughly made, of wrought iron. Erbe showed him the same lock on two other occasions, shortly afterwards, at the establishment where both of them were employed. Masta says, that he examined the lock at the time with the case open; that the hub was in three pieces, the middle one of which would slide between the plate and the case, and let the latch forward, when the spindle was pulled out; that the arrangement by which the latch was made capable of reversal, in the lock shown to him by Erbe, was the same as the arrangement for that purpose in the duplicate or counterpart before referred to; and that, when he first saw Erbe's latch, he had never before seen or heard of a reversible latch. Patterson says, that the reversible latch which Erbe showed to him was like the duplicate or counterpart before referred to; that the hub or follower was so constructed that, when the spindle was withdrawn, the hub would slide forward between the cases, and allow the head of the latch to protrude beyond the face of the lock, so as to be reversed, there being a swivel joint connection between the head of the latch and the yoke; that the movable part of the hub was a single piece with arms, like an ordinary follower or hub, and there was, in one side of the case, on the spindle, a shoulder or boss, which filled the spindle hole, and on the other side a ring or washer on the spindle, which centered the spindle in the hole in the case; that he, the witness, at the time, regarded the thing as a new invention; and

that the latch part and its connections were complete.

Erbe did not make a second lock of the kind until he made one which was deposited in the patent office in connection with an application he made for a patent in 1864. Nor did he put any such lock into use. on a door until after he had so applied for a patent. I am not satisfied, from the evidence, that the lock which Erbe so made in 1860 was put upon a door, or that any other lock of the kind made by Erbe was put upon a door, until after such application for a patent was made by Erbe. On this evidence, it is insisted, on the part of the plaintiff, that, as but one lock was made by Erbe before Kirkham made his invention and obtained his patent, and as the lock so made by Erbe was not put upon a door, or put into use or tested otherwise than by such exhibition of it and its working to the three witnesses to whom it was shown, before Kirkham made his invention and obtained his patent, the invention of Erbe was not one reduced to practice before the invention of Kirkham was made, but rested only in experiment, and was not a completed invention. I think this position cannot be maintained in reference to this reversible latch of Erbe's. It was no mere experiment. In the shape in which it was exhibited by Erbe, and is reproduced now in the duplicate or counterpart before referred to, it is a complete working reversible latch, requiring no alteration, adaptation, addition or improvement to fit it for use as a latch, and as a reversible latch. It was put into practical form, in working metal, as a latch, and was ready for practical use, in itself, and as a pattern or model from which any number like it could have been made by Erbe and the three other persons who saw it and understood its construction. It was, therefore, a completed and perfected invention, and the imparting of a knowledge of its construction by its exhibition by Erbe to the three persons, connected with the business of lock making, who saw it and understood its arrangement, was the giving to the public of such a knowledge of it, as a complete invention, before Kirkland made his invention of the same thing, as to deprive Kirkham of the right to be considered. in law, as the first inventor of such invention, even though he was an original and independent inventor of it. A putting of an invention into use is generally strong evidence of a reduction of it to practice. But it may be a completed invention, put into practical form, ready for practical use and reduced to practice, without being put into use, in the general acceptation of that word. If the adaptation to use, or even the use itself, is merely experimental, the invention is not perfected. But use is not necessarily required in order to show perfection or completion. In respect to most inventions, use, not merely experimental, is one of the best proofs of the reduction of an invention to practice. But the particular invention in question is an illustration of the fact, that a piece of mechanism may be shown to have been completed, and not to have rested in experiment, and to have been capable, from its structure,, of working successfully, so as to deprive of the merit of novelty, in the patent law, a subsequent independent invention of the same thing, without its being shown that such piece of mechanism was actually used before the making of such subsequent invention. To put upon a door a reversible latch constructed like Kirkham's and Erbe's and the defendants', so that such latch shall be in working order and be used practically as a latch, is to deprive it of its active reversible character. The only occasion on which such a latch ever needs to be reversed or ever can be reversed, is when it is off from a door, and is not in use as a latch. So long as it is on a door and is in use as a latch, the mechanism for reversing the latch is dormant and inactive. It in no manner demonstrates the capacity for successful action of the mechanism for reversing. to put the latch in use upon a door. Such use is the mose effective way of depriving any observer of all opportunity of testing the capacity of the mechanism for reversing, and can only test the action of the latch as a latch not possessed of any capacity of being reversed. The only point of view in which the necessity for use on a door of a lock containing such a reversible latch can be urged is, that, until that is done, it cannot be seen or known that the latch with such reversible mechanism attached to it will work successfully as a latch, or that the reversing mechanism will not have to be regarded as an unsuccessful experiment; because attached to a latch not shown to work successfully as a latch with such attachment. In the present case, however, it is not pretended that the latch of Erbe, represented by the duplicate or counterpart before referred to, will not work successfully as a latch on a door, when the spindle is in position. or that any experiment or use was necessary to ascertain whether the presence of the reversing mechanism would or would not interfere with the action of the latch as a latch when on a door. The only use of the reversing mechanism is to enable the bevelled side of the projecting head of the latch to be turned to the proper position to suit the door on which the latch is to be put, as a right-handed or a left-handed door, and, when once the latch is arranged to suit a particular door and is put on such door, the reversing mechanism is of no more use or service, while the latch remains on such door, than if such mechanism had no existence. It can never again be of any use until and unless the same latch is required to be put upon a door differently hung, in respect to being right-handed or left-handed. Therefore, the principal scope of the use of such reversing mechanism is to release the house-builder from the necessi-

ty of exercising any choice as to selecting locks with latches made especially for right-handed or left-handed doors, and to relieve lockmakers from the necessity of making locks especially for each class of doors. In view of these facts, in reference to this invention, the exhibition of a lock containing it to persons versed in lock-making, who understood its construction and working, and who recognized it at the time as a completed thing, capable of working and effecting the result intended, as to reversing the latch, and who were shown how it worked, so as to be capable of being used for either a right-handed or a left-handed door, must be regarded as substantially a use of the reversing mechanism, which is the whole invention. Such use as Erbe put the lock to in showing Brosi and Masta and Patterson how the reversing mechanism practically worked, embodied as extensive and effective a use of such mechanism as it would have been likely to have had, if such lock had been sold to a purchaser who should have put it in use upon a door. These views are confirmed by, and result from, the most carefully considered cases and authorities which are to be met with on this subject. Reed v. Cutter [Case No. 11,645]; Bedford v. Hunt [Id. 1,217]; Curt. Pat. § 87; Whitely v. Swayne, 7 Wall. [74 U. S.] 685.

It follows, from these considerations, that the invention of Kirkham was fully anticipated by that of Erbe, and that the bill must be dismissed, with costs.

[NOTE. Complainant appealed to the supreme court, where the decree of the circuit court was affirmed.

[Mr. Justice Swayne who delivered the opinion, after reviewing the testimony, stated: "Here it is abundantly proved that the lock originally made by Erbe 'was complete, and capable of working.' The priority of Erbe's invention is clearly shown. It was known at the time to at least five persons, including Jones, and probably to many others, in the shop where Erbe worked; and the lock was put in use, being applied to a door, as proved by Brosi. It was thus tested, and shown to be successful. These facts bring the case made by the appellees within the severest legal tests which can be applied to them. The defense relied upon is fully made out." Coffin v. Ogden, 18 Wall. (85 U. S.) 120.]